A01A0929. BELK, INC. v. WARNER ROBINS ZAMIAS LIMITED
PARTNERSHIP.
(555 SE2d 19)

MILLER, Judge.

This case involves the construction of a contract between a mall owner and one of its anchor tenants. The contract requires the mall owner to obtain the consent of the anchor tenant before constructing any building not shown on the site plan, which plan is attached to and incorporated into the contract. The question is whether language in the site plan authorizing a variance in a future store's size and configuration permits the mall owner to construct a store substantially larger than the 70,000-square-foot square depicted and described in the site plan for the future store. We hold the language permits the larger store and thus affirm the court's granting of summary judgment in favor of the mall owner.

As this is the appeal of a grant of summary judgment, we consider the case de novo and construe the facts in favor of the nonmovant.[1] So construed, the evidence shows that in 1989 Warner Robins Zamias Limited Partnership (a mall developer) and Belk, Inc. (a department store) entered into a contract (drafted in large part by Belk) leasing Belk certain space at the Galleria Mall being built near Warner Robins. Attached to and incorporated into the lease was a site plan (drafted by Zamias) depicting the mall. Zamias agreed that without written consent from Belk, "no buildings nor other structures of any kind shall be constructed or otherwise built, erected or placed anywhere on the Shopping Center Site, except as shown on the Site Plan or otherwise permitted by this Lease. . . ." The original site plan showed an 86,479-square-foot "Future Proposed Discount Department Store" to be built on pad no. 6.

---

[1] *Bryant v. PMC Capital*, 244 Ga. App. 313 (535 SE2d 319) (2000).

Over the years, the parties amended the lease on three occasions, with the third and final amendment substituting in a new site plan that renumbered pad no. 6 to pad no. 5 and that showed a 70,000-square-foot "Proposed Future Store" to be built on this pad. The following words appeared for the first time inside the dotted lines depicting this store: "Actual Configuration & Size May Vary[,] A Minimum of 5.5 Parking Ratio Will Be Maintained." The "5.5 Parking Ratio" refers to a requirement that for every thousand square feet of leasable space, there was to be available 5.5 parking spaces. The parking spaces depicted on the site plan met this ratio for the 70,000-square-foot store shown.

Some years later Zamias struck a deal with Dillard's (another department store) to have Dillard's construct a 101,298-square-foot store on pad no. 5. Sufficient additional parking was provided to maintain the ratio. Belk objected, arguing that the 70,000-square-foot figure represented a maximum and that the proposed store exceeded this limit. Zamias announced that it intended to go forward with the deal, arguing that the lease and site plan allowed the size to increase. Belk brought the present suit against Zamias to enjoin the construction of the store. After the court denied Belk's motion for an interlocutory injunction, both parties moved for summary judgment, resulting in the grant of Zamias's motion and the denial of Belk's. Belk appeals.

The issue on appeal is whether the language of the contract allows Belk to veto the construction of the proposed 101,298-square-foot Dillard's on pad no. 5. "[T]he construction of a contract is a question of law for the court based on the intent of the parties as set forth in the contract. . . ."[2] We review de novo the trial court's application of the following three-step procedure for construing the contract. "The trial court must first decide whether the contract language is ambiguous; if it is ambiguous, the trial court must then apply the applicable rules of construction (OCGA § 13-2-2); if after doing so the trial court determines that an ambiguity still remains, the jury must then resolve the ambiguity."[3]

The parties both argue that the contract is unambiguous; they simply disagree on the meaning of that contract language. We agree that the lease is unambiguous.

Paragraph 9 (j) allows Belk to veto any buildings or structures at the mall if they are not "shown on the Site Plan or otherwise permitted by this Lease." The amended site plan, which is attached to and

[2] *Deep Six v. Abernathy*, 246 Ga. App. 71, 73 (2) (538 SE2d 886) (2000); see OCGA §§ 13-2-1; 13-2-3.

[3] *Deep Six*, supra, 246 Ga. App. at .73 (2), quoting *Travelers Ins. Co. v. Blakey*, 180 Ga. App. 520 (349 SE2d 474) (1986).

incorporated into the lease, shows a "Proposed Future Store" on pad no. 5 depicted by a dotted line forming a square and described as 70,000 square feet. Also within the dotted line area is the language: "Actual Configuration & Size May Vary[,] A Minimum of 5.5 Parking Ratio Will Be Maintained."

Since the site plan expressly provides that the actual size and configuration of the future store may vary, and places no limit on that variance, we will not insert words to limit the permitted variance.[4] In this context, the dotted line simply shows the intended location of the future store, and the 70,000-square-foot figure simply reflects an approximation that places no outside limit on the size of the future store.

Other provisions in the lease support this interpretation. In the text of the lease is language expressly prohibiting the construction of freestanding buildings that "exceed 10,000 square feet of Floor Area" and expressly requiring certain stores to have no less than specified square-footage minimums. Thus, when the parties intended to limit the maximum or minimum size of a proposed store, they used clear language to do so.[5] Also significant is the phrase "A Minimum of 5.5 Parking Ratio Will Be Maintained" that follows the warning that the actual size and configuration of the store might vary. Since sufficient parking spaces are depicted on the site plan for a 70,000-square-foot store or smaller, the only purpose for this language is the anticipation that the future store would exceed this size and thus would require additional parking spaces to maintain this ratio.

Belk raises two counterarguments. First, Belk claims that the variance and parking ratio language refers not to size of the future store, but to a temporary grass area that overlies the pad pending the construction of a store. This argument fails for at least two reasons: (1) this same language is found within the dotted lines of the other two future store pads shown on the site plan, but is not found in another "Temporary Grass Area" that does not overlie a store pad, thus showing the language is referring to the size of the future store, not to the size of the overlying grassy area; and (2) all "Temporary Grass Area" language on the site plan is in boldface type whereas the variance and parking ratio language is in the same regular typeface that describes the projected size of the future stores.

Second, Belk contends that paragraph 1 (k) of the lease imposes a maximum limit on this store insofar as it defines "Future Department Stores" as department store buildings "constructed within the

---

[4] See *Wilbanks v. Mai*, 232 Ga. App. 198, 199 (501 SE2d 513) (1998) (plain and obvious words must be given their literal meaning and no new terms can be inserted).

[5] See *Deep Six*, supra, 246 Ga. App. at 74 (2) ("[W]e look at the whole contract in arriving at the construction of any part.") (footnote omitted).

Permissible Building Areas in the Shopping Center designated 'Future Department Store' on the Site Plan. . . ." Belk argues that the dotted line represents the outer limits of the "Permissible Building Area" and that therefore the new store must be built "within" or inside of its parameters, which according to the site plan scale represents a 72,000-square-foot box. This provision, however, does not apply to the store pad at issue here for the simple reason that by its express terms the provision applies only to those "Permissible Building Areas" "designated 'Future Department Store' on the Site Plan." The pad here is not so designated. Unlike earlier versions of the site plan designating this pad as a "Future Proposed Discount Department Store" or a "Future Proposed Department Store," the current site plan designates this pad as "Proposed Future Store." Thus, paragraph 1 (k), which applies only to those pads designated as "Future Department Store," does not apply to a pad designated by the clearly broader and more inclusive term "Future Store."[6] It is obvious that after years of unsuccessfully marketing this pad to other department stores, Zamias expanded the uses for this pad by getting Belk to agree to allow any type of store on this spot, thus freeing it from any restriction possibly imposed by paragraph 1 (k).

Moreover, even if paragraph 1 (k) applied, it does not expressly limit the size of the store as was done elsewhere in the lease with regard to freestanding buildings. Since we are instructed to strictly construe restrictive covenants so as to minimize their impact on the right of landowners to use their property for any lawful purpose,[7] we hold that this provision, which contains an express limitation as to the minimum size of the store, does not restrict the maximum size of the store by use of the single word "within," particularly where the parties elsewhere in the lease use clear language to limit maximum sizes of buildings. To follow Belk's interpretation would render meaningless the designation "Future Store," a point Belk concedes in its appellate brief. This we decline to do.[8]

Since the lease does not limit the maximum size of the proposed store on pad no. 5, the trial court correctly granted summary judgment to Zamias and denied summary judgment to Belk.

*Judgment affirmed. Andrews, P. J., and Eldridge, J., concur.*

---

[6] Belk effectively concedes this point in its brief when it argues that "the approved Current Site Plan no longer has a Future Department Store area designated, and thus there is no Permissible Building Area provided for a Future Department Store of any size."

[7] *Douglas v. Wages*, 271 Ga. 616, 617 (1) (523 SE2d 330) (1999).

[8] See *Deep Six*, supra, 246 Ga. App. at 74 (2) ("We should avoid any construction that renders portions of the contract language meaningless.") (footnote omitted).

DECIDED SEPTEMBER 24, 2001.

*Jones, Cork & Miller, H. Jerome Strickland, Hubert C. Lovein, Jr.*, for appellant.

*Kritzer & Levick, Michael S. French, David L. Pardue, Walker, Hulbert, Gray, Byrd & Christy, Charles W. Byrd*, for appellee.